UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
| ) | |
| Plaintiff-Respondent,      ) | |
| ) | |
| v.      ) | Case Nos. 4:17-cr-40039-SLD & 4:21- |
| ) | cv-04202-SLD |
| BRENNEN MERLE SMITH,      ) | |
| ) | |
| Defendant-Petitioner.      ) | |

<u>ORDER</u>

Before the Court are Defendant-Petitioner Brennen Merle Smith's Motion to Vacate, Set

Aside or Correct Sentence Pursuant to Title 28 United States Code Service § 2255 ("2255

Motion"), ECF No. 86,[1] Motion for Leave to Amend Affidavit of Lisa K. Durbin ("Motion to

Add Affidavit"), ECF No. 93, and Motion for Leave to Amend, ECF No. 97 at 1–4.  For the

reasons that follow, the motions are DENIED.

**BACKGROUND**

"Smith stole a pickup truck in Iowa, drove it across the Mississippi River into Illinois,

then crashed into a median and fled the scene, leaving a stolen handgun inside."  *United States v.*

*Smith*, 981 F.3d 606, 607 (7th Cir. 2020), *reh'g denied* Feb. 22, 2021 Order, Case No. 18-3696

(7th Cir. Feb. 22, 2021), Doc. 61.  On April 19, 2017, a grand jury returned an indictment against

Smith charging him with two counts: (1) knowing possession of a firearm which had previously

traveled in interstate commerce as an individual who had been previously convicted of a crime

punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C.

§§ 922(g)(1), 924(a)(2); and (2) knowing possession of goods worth $5,000 or more which he

---

[1] ECF references and other citations correspond to the docket of 4:17-cr-40039-SLD unless otherwise specified.

knew to be stolen and which had crossed state lines after being stolen in violation of 18 U.S.C.

§§ 2, 2315.  Indictment 1–2, ECF No. 1.  Attorney Brian Mullins was initially appointed to

represent Smith.  Apr. 27, 2017 Min. Entry.  He pleaded guilty to both counts without a plea

agreement.  Jan. 23, 2018 Min. Entry.  Prior to sentencing, he became dissatisfied with Mullins,

and replaced Mullins with a retained attorney, John O. Moeller.  *See* Mot. New Counsel, ECF

No. 24; July 13, 2018 Min. Entry.

The Third Revised Presentence Investigation Report ("PSR") prepared by the United

States Probation Office set the base offense level for Smith's felon-in-possession charge under

18 U.S.C. § 922(g)(1) at 24 because he had "at least two [prior] felony convictions of either a

crime of violence or a controlled substance offense."  Third Revised PSR ¶ 24 (citing U.S.

Sent'g Guidelines Manual § 2K2.1(a)(2) (U.S. Sent'g Comm'n 2018)), ECF No. 38; *see also*

Sent'g Hr'g Tr. 26:23–25 (adopting the Third Revised PSR), ECF No. 53; U.S. Sent'g

Guidelines Manual § 4B1.2(b) (U.S. Sent'g Comm'n 2018) (defining "crime of violence").[2]

Subtracting three points for acceptance of responsibility and adding two points because the

firearm was stolen, Smith's total offense level was calculated to be 23.  Third Revised PSR

¶¶ 25, 41–43.[3]  Combined with a criminal-history category of VI, his advisory Guidelines range

was 92 to 115 months of imprisonment.  *Id.* ¶¶ 62, 123.

As relevant to the 2255 Motion, Moeller objected to the Third Revised PSR's setting the

base offense level at 24.  He did not contest that Smith had a prior conviction for a controlled

---

[2] A Fourth Revised PSR, ECF No. 42, was docketed the day after Smith's sentencing.  The only changes made to the Third Revised PSR were to incorporate the agreed resolution of one of Smith's objections.  *See* Sent'g Hr'g Tr. 3:12–4:10; *compare* Third Revised PSR ¶¶ 13–14 (describing incriminating statements Smith made to police regarding how he came into possession of the at-issue firearm as part of "The Offense Conduct"), *with* Fourth Revised PSR ¶¶ 13–14, 67 (omitting those incriminating statements and moving other factual descriptions from "The Offense Conduct" to "Other Criminal Conduct").  As the changes are immaterial to Smith's 2255 Motion, the Court cites to the Third Revised PSR for ease of reference.

[3] There was a separate offense level calculated for the possession of stolen goods charge, but the resulting multiple count adjustment did not affect the adjusted offense level.  *See* Third Revised PSR ¶ 36.

substance offense but argued that neither of Smith's prior Iowa assaults qualified as crimes of violence. *Id.* at 34–38. One of the two sentencing briefs filed by Moeller addressed this issue, *see generally* Moeller's Sent'g Br., ECF No. 35, and Moeller also argued this objection at Smith's sentencing hearing, *see* Sent'g Hr'g Tr. 6:18–17:5. The Court was not persuaded and overruled Moeller's objection. *Id.* at 23:15–25:19. On December 6, 2018, Smith was sentenced to 115 months of imprisonment and three years of supervised release. Judgment 1–3, ECF No. 43. The Court also imposed a special assessment of $200, ordered him to pay $28,708.98 in restitution, and required him to forfeit the at-issue firearm. *Id.* at 5–6.

Smith appealed, and after Moeller withdrew, Thomas W. Patton and Peter W. Henderson were appointed to represent him. Apr. 9, 2019 Seventh Circuit Order, ECF No. 56; Not. Appearance 1, ECF No. 57. Henderson also argued that Smith's two prior assault convictions under Iowa law did not count as crimes of violence. *See generally* Appellant Br. 6, Case No. 18-3696 (7th Cir. Aug. 7, 2019), Doc. 24. The Seventh Circuit was similarly unpersuaded and affirmed Smith's sentence, determining that at least one of the at-issue prior convictions counted as a crime of violence. *See Smith*, 981 F.3d at 608. His sentence was later reduced to 80 months of imprisonment and three years of supervised release. Am. Judgment 1–3, ECF No. 84.

Smith signed his 2255 Motion on November 29, 2021, and it was filed on December 3, 2021. 2255 Mot. 4. He argues that he received ineffective assistance of counsel in violation of the Sixth Amendment. *Id.* at 3. He points to three bases for his ineffective assistance of counsel claim: (1) Moeller did not cite Smith's preferred authorities when presenting Smith's arguments for why his prior convictions under Iowa law were not crimes of violence pursuant to the framework articulated in *Mathis v. United States*, 579 U.S. 500 (2016); (2) Moeller failed to research and challenge the restitution obligation imposed upon Smith by the Court; and (3)

Henderson did not cite Smith's preferred authorities when presenting Smith's arguments regarding his prior convictions under Iowa law and did not request a stay in light of the then-pending decision in *Borden v. United States*, 593 U.S. 420 (2021). 2255 Mot. 3–4; Mem. L. Supp. 2255 Mot. 4–5, 12–21, ECF No. 86-2. Finally, he argues that the Supreme Court's decision in *Borden* demonstrates that his prior convictions under Iowa law were not crimes of violence. *See, e.g.*, 2255 Mot. 4.

At the Court's direction, Moeller and Henderson provided affidavits responding to Smith's claims. *See* Jan. 18, 2022 Text Order; Henderson Aff., ECF No. 95-1; Moeller Aff., ECF No. 95-2. Before the Government filed its response, Smith sought leave to amend his 2255 Motion to include an affidavit from his mother. *See* Mot. Add Aff. 1–2; Durbin Aff. 1–2, Mot. Add Aff. Ex. 1, ECF No. 93 at 4–6. In its response, the Government argues that Smith's claims are not cognizable under 28 U.S.C. § 2255, that both his trial and appellate counsel were effective, and that *Borden* is inapposite. *See, e.g.*, Resp. 2255 Mot. 8, ECF No. 95. On April 25, 2022, Smith filed his reply. Reply 2255 Mot., ECF Nos. 96–96-1.[4] On September 29, 2022, he filed another motion for leave to amend his 2255 Motion, directing the Court to the Supreme Court's decision in *United States v. Taylor*, 596 U.S. 845 (2022). Mot. Leave Am. 2–3, ECF No. 97 at 1–4.[5]

---

[4] In the reply, Smith requests that the 2255 Motion "and Government Response ECF 95 be placed under seal." Reply 2255 Mot. 2 n.2. "The Court does not approve of filing of documents under seal as a general matter." Criminal LR 49.9(A)(2). Smith does not assert any factual basis or cite any legal authority to justify sealing the Government's response, nor his 2255 Motion. Therefore, his request to seal is DENIED.

[5] Smith was released from the custody of the Bureau of Prisons on October 6, 2022, and began his three-year term of supervised release. *See* Not. Change Address, ECF No. 98; April 12, 2023 Order Modifying Conditions Release, ECF No. 99; *see also Smith v. Streeval*, No. 21-7459, 2024 WL 701787, at *1, 4 (4th Cir. Feb. 21, 2024) (dismissing Smith's appeal relating to his motion under 28 U.S.C. § 2241—which had challenged the calculation of his release date—as moot for lack of redressable injury because Smith conceded that a correction to his release date while his appeal was pending meant "that he was released from prison on the correct date"). The jurisdiction for supervising Smith's release was transferred to the United States District Court for the Southern District of Iowa. *See* Transfer Jurisdiction, ECF No. 105. Smith then committed new law violations, his supervised release was revoked, and he received a sentence of twenty-four months of imprisonment to be followed by twelve months of supervised release. Revocation Judgment, *United States v. Smith*, Case No. 3:24-cr-00005-SHL-SBJ-1 (S.D. Iowa Feb. 1, 2024), ECF

# DISCUSSION

## I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel.  U.S. Const. amend. VI.  Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  This test requires a defendant to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result.  *Id.* at 688, 692.  The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial strategies."  *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted).  The defendant "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."  *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but

---

No. 20.  Despite completing his original term of imprisonment, Smith's 2255 Motion is not moot because if he served too much time in prison pursuant to that original term, the extra time that he served could be credited toward his current term of imprisonment.  *See Parker v. Sproul*, No. 18-1697, 2022 WL 258586, at *2 (7th Cir. Jan. 27, 2022).

for counsel's unprofessional errors, the result of the proceeding would have been different."
*Strickland*, 466 U.S. at 694.

## II.    Analysis

The Court first addresses whether the Court may consider the filings which Smith made after filing his 2255 Motion. The Court then turns to the Government's threshold argument that some of Smith's claims are not cognizable on collateral review. Finally, the Court considers the merits of Smith's arguments that his trial counsel and appellate counsel were ineffective.

### A.  Motion to Add Affidavit and Motion for Leave to Amend

Smith seeks the Court's leave to amend his 2255 Motion. Although "second or successive" § 2255 motions require approval from the appropriate court of appeals, *see* 28 U.S.C. § 2255(h), "a proposal to amend one's first motion is not a 'second' motion,' at least when the first has not yet reached a final decision." *Vitrano v. United States*, 643 F.3d 229, 233 (7th Cir. 2011) (citation omitted) (quotation marks omitted). Federal law "allows every prisoner one full opportunity to seek collateral review. Part of that opportunity—part of every civil case—is an entitlement to add or drop issues while the litigation proceeds." *Id.* at 234 (quotation marks omitted). Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," which "the court should freely give . . . when justice so requires." *See Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999) ("Because the Rules Governing Section 2255 Proceedings for the United States District Courts do not deal with amendments to motions for collateral review, the district court should turn to Fed.R.Civ.P. 15(a)."). "Under Rule 15, a court may deny [leave to file] [an] amendment due to undue delay, bad faith, dilatory motive, prejudice or futility." *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002).

Here, Smith twice requested the Court's leave to amend his 2255 Motion pursuant to Rule 15(a)(2).  The Government did not indicate any opposition to either request to amend. First, in a February 22, 2022 filing, he submitted an affidavit from his mother regarding communications which Smith and his mother had with his attorneys.  Durbin Aff. ¶¶ 1–6.  He asserts that the affidavit "fully corroborates the pleading made . . . in his § 2225 Motion," Mot. Add Aff. 2, and that it "asserts a claim or defense that arose out of the conduct, transaction or occurrence set out [. . .] in the original petition," *id.* (quoting Fed. R. Civ. P. 15(c)(1)(B)).  But Durbin's affidavit does not assert any claim, let alone a new one—she simply avers that she has possession of Smith's legal notes and memoranda, spoke and corresponded with Smith's attorneys, and could be a witness if necessary.  *See generally* Durbin Aff.  Potentially corroborative evidence of Smith's existing claims is not a new "claim or defense," such that the Court DENIES the Motion to Add Affidavit as futile.

Second, in a September 29, 2022 filing, Smith directed the Court to the Supreme Court's then-recent decision in *Taylor*, 596 U.S. at 845.  Mot. Leave Amend 2–3.  Attached to that filing is a supporting memorandum, wherein he argues that *Taylor* supports his 2255 Motion's arguments, specifically that his assault conviction under section 708.2(3) should not count as a crime of violence because it reaches non-intentional threats.  *See generally* Mem. Supp. Mot. Amend, ECF No. 97 at 5–9.  *Taylor* held that attempted Hobbs Act robbery, 18 U.S.C. § 1951(a), did not count as a crime of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A).  *Taylor*, 596 U.S. at 852.  Justice Gorsuch's plurality opinion in *Taylor* repeatedly distinguished between attempted Hobbs Act robbery and completed Hobbs Act robbery.  *See, e.g.*, *Taylor*, 596 U.S. at 851 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause.").  Smith's

conviction under 708.2(3) required a completed assault and use or display of a dangerous weapon in conjunction with that assault, not merely an attempted assault. *Taylor* is similarly of no help to Smith. The Court also DENIES the Motion for Leave to Amend as futile.

### B. Cognizability

As a threshold matter, the Government argues that: (1) Smith's challenge to the calculation of his base offense level under the United States Sentencing Guidelines ("Guidelines") is not cognizable on collateral review because his sentence did not exceed the statutory maximum, Resp. 2255 Mot. 9–10, 13–15; and (2) "Smith's § 2255 claims contesting restitution are equally non-cognizable," because "§ 2255 relief is limited to issues affecting custody and liberty," *id.* at 10, 15 (citing *Virsnieks v. Smith*, 521 F.3d 707, 722 (7th Cir. 2008)). Smith counters that his Guidelines-based ineffectiveness claims are cognizable because an attorney's errors with respect to Guidelines calculations are often sufficient to satisfy the required showing of prejudice under *Strickland*, Reply 2255 Mot. 11 (citing *Molina-Martinez v. United States*, 578 U.S. 189, 197–200 (2016)), and that his counsel's ineffectiveness should allow for review of his restitution-based claims, *id.* at 19–21. The Government's cognizability arguments are sufficient to dispose of Smith's restitution-based claim but not his Guidelines-based ineffectiveness claims.

A § 2255 motion may not be used to challenge the restitution component of a sentence. *See United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015); *cf. Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir. 2009) ("[A] habeas corpus petition must attack the fact or duration of one's sentence; if it does not, it does not state a proper basis for relief under § 2254 or § 2255."); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997). Adding the gloss of a claim for ineffective assistance of counsel does not make restitution-based claims cognizable under a

§ 2255 motion. *Wyatt v. United States*, No. 22-CV-935-JPS, 2022 WL 9393563, at *4 (E.D. Wis. Oct. 14, 2022) ("[E]ven when errors in restitution are raised as the basis of an ineffective assistance claim, § 2255 is not available to challenge an order of restitution." (quotation marks omitted)).  Therefore, the Court does not consider Smith's arguments that his counsel was constitutionally ineffective regarding his restitution obligations.  Any restitution-related claim is DENIED for lack of cognizability.

As to Smith's Guidelines-based claims, the Government acknowledges that Smith's arguments about his base offense level are "linked to his allegations of ineffective assistance of counsel."  Resp. 2255 Mot. 13.  To the extent the Government is arguing that Smith cannot bring a direct claim of error under the Sentencing Guidelines, the Court agrees.  *See Hawkins v. United States*, 706 F.3d 820, 822–24 (7th Cir.) ("An erroneous computation of an advisory guidelines sentence is reversible (unless harmless) on direct appeal; it doesn't follow that it's reversible years later in a postconviction proceeding."), *opinion supplemented on denial of reh'g*, 724 F.3d 915 (7th Cir. 2013); *United States v. Coleman*, 763 F.3d 706, 708–09 (7th Cir.) ("[T]he erroneous determination that the petitioner was a career offender in calculating his sentence [i]s not a cognizable error under § 2255 [if the petitioner was sentenced while the Guidelines were merely advisory] . . . ."), *as amended on denial of reh'g and reh'g en banc* (7th Cir. Oct. 16, 2014).  Accordingly, Smith's claim that under *Borden* his prior convictions do not qualify as crimes of violence under the Guidelines is not cognizable.  But to the extent the Government is arguing that a Guidelines error cannot form the basis of an ineffective assistance of counsel claim, the Court disagrees.  *Cf. Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance."); *see also,*

*e.g.*, *Bridges v. United States*, 991 F.3d 793, 797 (7th Cir. 2021) (reversing and remanding for evidentiary hearing on § 2255 motion where counsel was potentially ineffective for failing to realize and argue that petitioner's predicate conviction did not count as a crime of violence under the career offender Guidelines).  Smith's Guidelines-based ineffective assistance of counsel claims are cognizable.

### C.  Effectiveness of Trial Counsel

#### 1.  Background

Smith argues that trial counsel provided ineffective assistance by failing to adequately research or support the argument that Smith's assault convictions did not qualify as crimes of violence.  2255 Mot. 3.  One of Smith's predicate convictions was a 2008 violation of Iowa Code § 708.2(3), which provides that "[a] person who commits an assault, as defined in section 708.1, and uses or displays a dangerous weapon in connection with the assault, is guilty of an aggravated misdemeanor."[6]  Section 708.1(2) in turn lists three different alternatives for assault, namely:

> (a) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.

> (b) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

> (c) Intentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another.

---

[6] Aggravated misdemeanors are punishable by up to two years in prison under Iowa law, and thus may qualify as predicate convictions for federal sentences despite the label of "misdemeanor."  *United States v. Carter*, 961 F.3d 953, 957 n.1 (7th Cir. 2020) (citing Iowa Code § 903.1).

*Id.* § 708.1(2)(a)–(c).[7]  A "dangerous weapon" includes "any instrument or device of any sort

whatsoever which is actually used in such a manner as to indicate that the defendant intends to

inflict death or serious injury upon the other, and which, when so used, is capable of inflicting

death upon a human being." *Id.* § 702.7.  The charging documents indicate that Smith was

charged with "assault . . . by using or displaying a dangerous weapon, to-wit: [a] metal bat," and

that he pleaded guilty to the crime of "assault with a dangerous weapon" in violation of sections

708.1(2)(c) and 708.2(3).  *Smith*, 981 F.3d at 611 (analyzing the underlying charging documents

and "conclud[ing] that subsection 708.1(2)(c) provide[d] the basis for Smith's aggravated-assault

conviction under section 708.2(3)"); AGCR038469 Sentencing Order, Gov't Sentencing Mem.

Ex. 1, ECF No. 34-1 at 2; AGCR038469 Trial Information, Gov't Sentencing Mem. Ex. 1, ECF

No. 34-1 at 1.[8]

## 2.  Alleged Ineffectiveness

Smith argues that his trial counsel, Moeller, was ineffective because Moeller failed to

understand and effectively present Smith's arguments that his conviction under section 708.2(3)

was not a crime of violence.  *See, e.g.*, 2255 Mot. 3.[9]  If Moeller had persuaded the Court,

---

[7] "Iowa amended § 708.1 in 2013, but that amendment was stylistic and affected only the numbering of the statute's subdivisions." *Carter*, 961 F.3d at 957 n.2.  Section 708.1 was amended again in 2021 to cover conduct which is not material to Smith's motion, namely the use of lasers.  *See* Iowa Code § 708.1(2)(d).  For ease of reference, the Court follows the Seventh Circuit's convention and uses the statutes' current numbering throughout this order, even if describing cases which analyzed prior versions of the statutes.  *See Carter*, 961 F.3d at 957 n.2.

[8] Smith also advances arguments that his conviction under Iowa Code § 708.2A for domestic-abuse assault is not a crime of violence.  *See, e.g.*, Mem. Supp. 2255 Mot. 21–23.  The Court's resolution of the arguments regarding section 708.2(3) obviates consideration of the arguments regarding section 708.2A.  *See Smith*, 981 F.3d at 611 n.2 ("Because we conclude that the 2008 aggravated-assault conviction is a qualifying crime of violence, we have no need to address Smith's 2013 conviction for domestic-abuse assault.").

[9] Smith also asserts that Moeller's questioning of the administrability of *Mathis* is indicative of Moeller's failure to understand how *Mathis* should be applied to his case.  Reply 2255 Mot. 10 (citing Sentencing Hr'g Tr. 6:18–25).  Far from evincing a fundamental misunderstanding of *Mathis*, Moeller was expressing a sentiment that was shared by the Government and a dissent in *Mathis* itself.  *See* Sentencing Hr'g Tr. 20:1–7; *Mathis*, 579 U.S. at 530 (Breyer, J., dissenting) ("The majority's approach, I fear, is not practical.").  Smith's invocation of this shared sentiment is not probative of whether Moeller failed to grasp the *Mathis* framework to the point that his performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Smith's base offense level would have been lower, as would the corresponding Guidelines range. *See* Mem. L. Supp. 2255 Mot. 9–10.  The Government responds that Moeller did advance this argument—it was simply rejected by the Court.  Resp. 2255 Mot. 16.

Smith wanted Moeller to advance two specific arguments: (1) that section 708.1(2) is indivisible because it lays out multiple factual means for satisfying one crime, not alternative elements creating separate crimes, *see* Mem. L. Supp. 2255 Mot. 4; Reply 2255 Mot. 4–11; Def.'s Br. Divisibility, Mem. L. Supp. 2255 Mot. Ex. 3, ECF No. 86-6 at 3–8; and (2) a *mens rea* argument, specifically that the Iowa statutes do not require intentionality, such that they reach merely reckless or negligent conduct and therefore convictions under those statutes cannot be considered crimes of violence, *see* Mem. L. Supp. 2255 Mot. 4, 12–18; Supp. Def.'s Br., Mem. L. Supp. 2255 Mot. Ex. 2, ECF Nos. 86-5 at 18–86-6 at 2; Reply 2255 Mot. 12–18.

### a.  Prejudice

To prove his ineffective assistance of counsel claim, Smith would need to show both that Moeller's failure to make these specific arguments was objectively unreasonable and that he was prejudiced by Moeller's errors.  In the sentencing context, prejudice occurs when there is a reasonable probability that the defendant would have been sentenced to less prison time.  *See Coleman v. United States*, 79 F.4th 922, 931 (7th Cir. 2023).  The Seventh Circuit decided on appeal that Smith had a requisite crime of violence and that, accordingly, his Guidelines range for imprisonment was correctly calculated.  *See Smith*, 981 F.3d at 610–11.  To find prejudice in this case, this Court would need to disagree with the Seventh Circuit's decision on appeal. However, absent good reason to reconsider, the Court is bound by that decision.  *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005) (holding that "in the context of § 2255 petitions," once the Seventh Circuit has decided an issue on the merits, "that decision establishes the law of the

case and is binding on a [court] asked to decide the same issue in a later phase of the same case, unless there is some good reason for reexamining it." (alteration in original) (quotation marks omitted)); *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) ("A § 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." (quotation marks omitted)). Smith has not identified a good reason—like an on-point intervening Supreme Court case effectively overruling the opinion in his appeal—for the Court to reexamine the Seventh Circuit's decision.

### b. Deficient Performance

In any case, Smith cannot show that Moeller performed deficiently. Smith conducted extensive research into his case and gave Moeller handwritten documents reflecting that research. *See* Mem. L. Supp. 2255 Mot. 4; Mems. L. One to Five, Mem. L. Supp. 2255 Mot. Ex. 1, ECF Nos. 86-4 at 1–86-5 at 17 (five handwritten memoranda of law, including supplements).[10] Moeller avers that he reviewed Smith's handwritten briefs, believed that Smith "was a competent 'jailhouse lawyer,'" and that he took seriously Smith's suggestions and requests. Moeller Aff. ¶¶ 2–3. He views Smith's claim of ineffectiveness as essentially a complaint that he "did not prepare a 'winning' brief" and asserts that "[his] objections, [his] research and [his] argument of [Smith's] objections were appropriate and the relevant case law at the time was considered appropriately." *Id.* ¶¶ 6–7. Smith acknowledges that Moeller advanced versions of these arguments, *see, e.g.*, Reply 2255 Mot. 12, but he argues that Moeller was

---

[10] Smith asserts that Moeller asked him to handwrite two shorter briefs so Moeller could produce typed versions thereof, instead of handwritten briefs. *See* Supp. Def.'s Br.; Def.'s Br. Divisibility. They dispute the purpose of producing the typed briefs—Smith asserts the briefs were typed so they could be filed before the Court, *see* Mem. L. Supp. 2255 Mot. 4, which Moeller denies, *see* Moeller Aff. ¶ 5 ("There was not an agreement that I would file 'briefs' prepared by Mr. Smith."). Resolving this issue is unnecessary because Moeller's decisions regarding which authorities to cite were reasonable strategic decisions.

ineffective because Moeller did not properly craft those arguments by citing to Smith's preferred authorities, *see, e.g.*, *id.* at 18 n.9.

While some decisions belong to the client alone, such as "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal," other decisions are "the lawyer's province," such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) (quotation marks omitted). "The review of an attorney's performance is highly deferential to mitigate hindsight bias, and the Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Barrett*, Nos. 2:17-CR-1-JVB-JEM, 2:21-CV-30-JVB, 2024 WL 1172685, at *2 (N.D. Ind. Mar. 19, 2024) (quoting *Strickland*, 466 U.S. at 689), *certificate of appealability denied*, No. 24-1636, 2024 WL 4578994 (7th Cir. Aug. 14, 2024); *see also Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016) ("*Strickland*'s inquiry is 'highly deferential' to a lawyer's plausible strategic choices . . . ." (quoting *Strickland*, 466 U.S. at 689)). When faced with a claim that counsel was constitutionally ineffective for failing to pursue a particular argument, the Seventh Circuit stated:

> Just because an argument has some remote chance of prevailing does not mean that a lawyer is constitutionally deficient for failing to bring it. Whether a lawyer provides ineffective assistance by failing to raise an argument depends in important part on its likelihood of success. Lawyers cannot be faulted for eschewing the proverbial kitchen sink and instead focusing on arguments with better odds. After all, trial counsel may undermine the credibility of the defense of his client if he simply presents the court with a barrage of attacks.

*Lickers v. United States*, 98 F.4th 847, 857 (7th Cir.) (citations and quotation marks omitted), *reh'g denied*, No. 22-1179, 2024 WL 2848676 (7th Cir. June 5, 2024), *and cert. denied*, 145 S. Ct. 407 (2024); *see also Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of

counsel."). Just as it is within the attorney's province to choose what arguments to pursue, so too is it within that attorney's province to choose which cases or authorities will best support those arguments. *Cf. McCoy*, 584 U.S. at 422.

Smith's arguments of ineffective assistance would require the Court to second-guess Moeller's strategic decisions about what arguments to advance and which cases to cite to support the arguments he did raise. Start with divisibility. Smith wanted Moeller to use a litany of Iowa caselaw interpreting section 708.1(2) to argue that Iowa's definition of assault laid out different factual means, not elements, such that section 708.1(2) was indivisible and the Court could not use the charging documents to determine which assault alternative underpinned his conviction under section 708.2(3). *See, e.g.*, Caselaw, Mem. L. One Ex. 1, ECF No. 86-4 at 6 (listing cases purportedly "[s]tating [that] Iowa's assault statute contains alternative means of commissio[n]"). Moeller made no explicit argument that section 708.1(2) was indivisible. Instead, he agreed that, under *Mathis,* section 708.2(3) was an element, *see* Sent'g Hr'g Tr. 9:14–17 (Moeller agreeing with the Court that "because [section 708.2(3)] enhances the penalty, *Mathis* says" it is an element), and essentially conceded that whether section 708.1(2) was indivisible was irrelevant to the Court's decision, *cf. id.* at 8:7–10 ("As I sit here today, I can't tell you whether the justices on the Supreme Court would say the assault is a divisible alternative statute or whether it's a combination."). The primary argument Moeller made was that section 708.2(3) did not have as an element the use or threatened use of physical force and, accordingly, did not qualify as a crime of violence. *See* Moeller Sent'g Br. 3–7.

The Court cannot find that Moeller's decision to forego arguing that section 708.1(2) was indivisible, and particularly his decision to not rely on the Iowa cases Smith wanted him to, was unreasonable. The Government was urging the Court to adopt the Eighth Circuit's view that a

conviction under section 708.2(3) was a crime of violence, as expressed in two pre-*Mathis* cases.
*See* Gov't Sent'g Br. 6, ECF No. 34 (first citing *United States v. Maid*, 772 F.3d 1118, 1121 (8th
Cir. 2014); and then citing *United States v. Collins*, 581 F. App'x 592, 595 (8th Cir. 2014)). The
Eighth Circuit reaffirmed those two cases in a post-*Mathis* decision, *United States v. McGee*, 890
F.3d 730 (8th Cir. 2018). The *McGee* court found that even if sections 708.1(2)(a)–(c)
enumerated different means of committing assault, a conviction under 708.2(3) still qualified as
a crime of violence. *McGee*, 890 F.3d at 736–37. Conceiving of 708.2(3) as two elements—(1)
commits an assault as defined by section 708.1(2); and (2) "uses or displays a dangerous weapon
in connection with the assault," § 708.2(3)—it found that the second element inherently satisfied
the use of force clause because "displaying an operational weapon before another in an angry or
threatening manner qualifies as a threatened use of physical force." *McGee*, 890 F.3d at 736–37
(quotation marks omitted). In other words, the Eighth Circuit found that even if Smith's
divisibility argument was right—*i.e.*, that sections 708.1(2)(a)–(c) were different factual means
and not elements—it did not matter because section 708.2(3) itself had an element which
satisfied the use of force clause. *See id.* at 736 (disagreeing with a *Mathis*-based argument about
section 708.1 because "the argument ignore[d] § 708.2(3)").

In the face of directly on-point federal authority which concluded that Smith's Iowa-law-
based divisibility argument about section 708.1(2) was immaterial to the ultimate question of
whether a conviction under section 708.2(3) was a crime of violence, Moeller made a reasonable
decision to focus on distinguishing that authority on other bases. For example, Moeller pointed
to the Eighth Circuit's post-*Mathis* analysis of a North Dakota statute for aggravated assault
which concluded that the statute was divisible but the petitioner's prior conviction under the
statute did not qualify as a crime of violence. Moeller Sent'g Br. 1–2 (citing *United States v.*

16

*Schneider*, 905 F.3d 1088, 1097 (8th Cir. 2018)); *see also Schneider*, 905 F.3d at 1097 (holding

that the North Dakota statute was "broader than the generic definition of aggravated assault

because it include[d] recklessly causing bodily injury" and therefore was not a crime of

violence).  He argued that *Schneider* reflected the correct approach to considering whether

Smith's prior convictions counted as crimes of violence, not *McGee*, because the court in

*Schneider* considered "the mental state necessary to commit the crime."  *See* Moeller Sent'g Br.

2 ("*Schneider sub silentilo* [sic] overrule[d] McGee and its predecessors when it determined the

North Dakota statutes similar to Iowa statutes were not crimes of violence."); Sent'g Hr'g Tr.

10:22–11:4 (similar).

Moeller's commentary at the sentencing hearing highlights another reason he chose not to

focus on the Iowa caselaw Smith wanted him to cite.  He explained that Iowa courts and

lawmakers do not think in terms of divisibility for purposes of the categorical approach and

*Mathis* and, thus, Iowa Supreme Court cases were not particularly instructive on that question.

*See, e.g.*, Sent'g Hr'g Tr. 7:1–8:14 ("Well, is it a divisible statute or not is what we're looking at

for sentencing guideline purposes.  When the Iowa Supreme Court or any other Supreme Court is

discussing a statute, that's not the issue they're discussing."); *cf. id.* at 8:18–22 ("[I] doubt very

much the Iowa legislature thought that [the penalty provision in section 708.2(3)] was an element

of the offense when they drafted the statute . . . .").  The Court will not second guess Moeller's

strategic decision and, accordingly, it finds that Moeller's failure to specifically argue that

§ 708.1(2) was indivisible does not constitute deficient performance.

Smith's claim that Moeller was ineffective with respect to litigating the *mens rea*

argument—that section 708.2(3) proscribes reckless or negligent conduct, and therefore cannot

be considered a crime of violence under Seventh Circuit caselaw—fares no better.  Moeller

17

advanced a version of this *mens rea* argument. *See* Moeller Sent'g Br. 4–7; Third Revised PSR

34–36. Specifically, he argued that Iowa's assault with a dangerous weapon statute was broader

than the generic definition of aggravated assault under the enumerated offenses clause of

§ 4B1.2, Moeller Sent'g Br. 5, and that because the Iowa assault with a dangerous weapon

statute does not require intent to harm, it does not satisfy the elements clause either, *id.* at 6–7.

In addition to *Schneider*, Moeller primarily relied upon an unpublished decision from the Fifth

Circuit which concluded that section 708.2(3) was not a crime of violence: *United States v. Rico-*

*Mendoza*, 548 F. App'x 210 (5th Cir. 2013). Moeller Sent'g Br. 1–2, 4–7. In *Rico-Mendoza*, the

Fifth Circuit concluded that: (1) sections 708.1(2) and 708.2(3) were broader than the generic

version of aggravated assault, thereby failing to satisfy the enumerated offenses clause; and (2)

those sections did not have a physical-force element, thereby failing to satisfy the use of force

clause. *Rico-Mendoza*, 548 F. App'x at 211–14. The Fifth Circuit noted that "[a]lthough there

are certainly situations encompassed by the statute that would constitute a threatened use of

physical force, the statute does not require intent to harm or apprehension by the victim of

potential harm." *Id.* at 214. At the sentencing hearing, Moeller focused on the issue of intent,

arguing that section 708.2(3) does not require proof of an intentional use or threatened use of

force, and that the Eighth Circuit cases like *McGee* "ignore the mental mens rea necessary to do

that or to have the force issue." Sent'g Hr'g Tr. 9:17–10:21.

    The Court was not persuaded by Moeller's argument nor the Fifth Circuit's reasoning in

*Rico-Mendoza*, instead adopting the Eighth Circuit's reasoning in *McGee* that using or

displaying a dangerous weapon in connection with an assault inherently involves force. *See id.*

at 25:4–14 ("[L]ike *McGee*, just regarding the display or use of a firearm, I can't think of a way,

. . . that the force clause would not be triggered when this element is alleged as part of the

charge.").  Both the Seventh and Eighth Circuits have since rejected the Fifth Circuit's analysis in *Rico-Mendoza*.  *United States v. Carter*, 961 F.3d 953, 958–59 (7th Cir. 2020); *United States v. Shannan*, 66 F.4th 1177, 1178–79 (8th Cir. 2023).

Smith again acknowledges that Moeller advanced this argument but insists that Moeller should have directed the Court to authority from the Seventh Circuit to bolster the persuasive value of cases like *Rico-Mendoza*.  *See* Mem. L. Supp. 2255 Mot. 8–9; Reply 2255 Mot. 12–13.  For example, Smith points to *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995), for the idea that the Seventh Circuit "determined that statutes criminalizing negligence or recklessness did not satisfy the definition of 'Crime of Violence'."  Mem. L. Supp. 2255 Mot. 8.  But it was Moeller's decision which cases to cite in support of this argument.  His strategic decision to focus on federal cases which either interpreted section 708.2(3) itself (*Rico-Mendoza*) or applied *Mathis* to a similar statute (*Schneider*) instead of Smith's preferred authorities was not objectively deficient performance.

In sum, Smith has not carried the heavy burden of demonstrating that Moeller was constitutionally ineffective.

### D.  Effectiveness of Appellate Counsel

Smith similarly argues that his appellate counsel, Henderson, was ineffective because he failed to properly develop and present Smith's arguments.  2255 Mot. 4; Mem. L. Supp. 2255 Mot. 4–5, 12–16; Reply 2255 Mot. 22–26.  Smith's ineffective assistance claim for Henderson mirrors his claim for Moeller—he argues that Henderson did not properly advance Smith's divisibility and *mens rea* arguments.  *E.g.*, Mem. L. Supp. 2255 Mot. 13–14 (first citing *Schneider*, 905 F.3d at 1095 n.4; and then citing *Rutherford*, 54 F.3d at 370).  Smith argues that Henderson "was deficient by not fully developing the arguments," despite being provided with

19

"[t]he building blocks to a successful appeal," and that he was also deficient by not requesting a stay pending *Borden*.  *Id.* at 15.

### 1.  Failure to Make Specific Arguments and Cite Specific Cases

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).  "Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U .S. 527, 535–36 (1986) (quoting *Jones*, 463 U.S. at 751–52).  To succeed on a claim of ineffective assistance of counsel for failure to raise an issue on appeal, "[the petitioner] 'must show that his appellate counsel overlooked an argument that was both obvious and clearly stronger than issues that appellate counsel did raise.'" *Palladinetti v. United States*, No. 22 C 5678, 2023 WL 3627713, at *5 (N.D. Ill. May 24, 2023) (quoting *Winfield v. Dorethy*, 956 F.3d 442, 456 (7th Cir. 2020)).  Smith must also show "there is a reasonable probability that raising the issue would have made a difference in the outcome of the appeal." *Id.* (quoting *Ramirez v. Tegels*, 963 F.3d 604, 614 (7th Cir. 2020)).  Smith has not made either showing.

As to prejudice, again, absent good reason to reexamine it, the Court is bound by the Seventh Circuit's decision that Smith had a prior conviction for a crime of violence, precluding the Court from finding prejudice.  *Fuller*, 398 F.3d at 648.

With respect to divisibility, Henderson noted that deciding the issue was unnecessary because "[t]he evidence in the record show[ed] only that [Smith] was convicted under § 708.1; it d[id] not specify a particular subsection." Appellant Br. 12.  There was no reason for Henderson

to explicitly argue that 708.1 was indivisible.  The Court cannot conclude that it was deficient

performance to not brief an issue that he thought was immaterial to deciding the case.

Rather than make a specific argument about the *mens rea* required under section 708.1(2)

and section 708.2(3), Henderson decided to focus on the argument that a conviction under

section 708.2(3) did not satisfy the use of force clause because one could merely display a

dangerous weapon without any intent to use force.  *See, e.g.*, Appellant Br. 14 (distinguishing

between section 708.1(2)(c)'s phrasing of "display[ing] *in a threatening manner* any dangerous

weapon" and section 708.2(3)'s phrasing of "display[ing] a dangerous weapon" (alterations in

original)).  He cited *Rutherford*, albeit with respect to Smith's domestic abuse conviction,

Appellant Reply Br. 8, Case No. 18-3696 (7th Cir. Aug. 7, 2019), Doc. 31, but "did not believe

the appeal would be improved by citing *Schneider*," the Eighth Circuit case that Moeller had

cited in support of his *mens rea* argument, Henderson Aff. ¶ 6.  Henderson's reasoned decisions

about how to raise the argument about intent and which cases to cite are strategic decisions that

the Court will not second guess.

The Constitution does not "impose on appointed counsel a duty to raise every 'colorable'

claim suggested by a client."  *Jones*, 463 U.S. at 754.  Smith has not shown that Henderson's

exercise of professional judgment as to which arguments to raise and which cases merited

inclusion in the briefing was objectively deficient performance.  Henderson was not

constitutionally ineffective.

### 2.  **Stay Pending *Borden***

Finally, Smith argues that Henderson was ineffective for failing to ask the Seventh

Circuit to stay the proceedings pending the outcome pending *Borden*.  Mem. L. Supp. 2255 Mot.

15.  The Supreme Court held in *Borden* that "a criminal offense can[not] count as a 'violent

21

felony' [under the Armed Career Criminal Act ("ACCA")] if it requires only a *mens rea* of recklessness." *Borden*, 593 U.S. at 423 (plurality opinion). The meaning of the terms "violent felony" in the ACCA and "crime of violence" as used by the Guidelines are interpreted in similar fashion because they are defined using the same language. *See, e.g.*, *United States v. Hart*, 578 F.3d 674, 677 n.3 (7th Cir. 2009). Presumably, Smith believes that had Henderson asked the Seventh Circuit to stay the proceedings pending resolution of *Borden*, the outcome of his appeal would have been different. But this claim rises and falls with the claim that Henderson was ineffective for failing to make a specific argument about *mens rea*. And Henderson was aware of the possibility of making specific arguments about *mens rea*, as demonstrated by his awareness of *Schneider*. But he chose to make a different argument—that use or display of a dangerous weapon itself did not have as an element the use, attempt, or threat to use force. This argument would not have been impacted by the outcome of *Borden*, so it was not unreasonable not to ask for a stay of his appeal pending resolution of *Borden.*

Regardless, there is no prejudice. As Smith acknowledges, the Seventh Circuit had long held that only intentional acts are covered by the elements clause. *See Rutherford*, 54 F.3d 370; *United States v. Campbell*, 865 F.3d 853, 857 (7th Cir. 2017) (citing *Rutherford* for the proposition that "negligent and reckless criminal acts fall[] outside the elements clause" of the career offender definition); *United States v. Williams*, 864 F.3d 826, 829 (7th Cir. 2017) (same). So *Borden* did not effect a change in the law applicable to Smith.

Moreover, the Government argues that *Borden* does not help Smith because the Iowa statutes at issue do not proscribe merely reckless conduct. Resp. 2255 Mot. 21–23. The Eighth Circuit has agreed with the Government's view that *Borden* has no impact on a conviction under section 708.2(3). *See United States v. Green*, 70 F.4th 478, 481 (8th Cir. 2023); *Shannan*, 66

F.4th at 1178–79.  The Eighth Circuit persuasively reasoned that *Borden* is inapposite because "[e]ach of the three ways of committing assault in Iowa [under section 708.1(2)] requires intent," and that it was "difficult to imagine how anyone could 'use[] or display[] a dangerous weapon' unintentionally."  *Green*, 70 F.4th at 481 (alterations in original) (quoting Iowa Code § 708.2(3)).  Accordingly, *Borden* does not furnish a basis to vacate Smith's sentence.

In sum, Smith has failed to show that his sentence violated the Constitution or federal law and is therefore not entitled to the vacatur of his sentence.

## III.    Evidentiary Hearing

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the . . . record[] . . . conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  This means that "a district court must grant an evidentiary hearing when the petitioner alleges facts that, if proven, would entitle him to relief."  *Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (emphasis and quotation marks omitted).  The record before the Court conclusively reveals that Smith is not entitled to relief, so no hearing is needed.

## IV.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Smith fails to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Brennen Merle Smith's Motion to Vacate, Set Aside or Correct Sentence Pursuant to Title 28 United States Code Service § 2255, ECF No. 86 is

DENIED, his Motion for Leave to Amend Affidavit of Lisa K. Durbin, ECF No. 93, is DENIED,

and his Motion for Leave to Amend, ECF No. 97 is DENIED.  The Clerk is directed to enter

judgment and close the accompanying civil case, No. 4:21-cv-04202-SLD.


Entered this 24th day of March, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE